## 66793. HOUSE v. THE STATE.
## 66794. MONTGOMERY v. THE STATE.

SOGNIER, Judge.

Appellants were tried jointly and convicted of armed robbery. On appeal appellant House contends the trial court erred (1) by allowing him to be tried in prison garb; (2) by overruling House's objection to his in-court identification because it was tainted by an impermissibly suggestive pretrial lineup; and (3) by overruling his objection to introduction of an oral confession made by House to the police. Appellant Montgomery contends the trial court erred by denying his motion for a severance, and by denying his motion for a new trial based on newly discovered evidence.

Appellants gained entrance to the home of Maxine Phillips on the pretext of having a plant for her husband, who was hospitalized. Once appellants were in the house, Mrs. Phillips was forced at gunpoint to lie face down on the floor and her hands were bound behind her back with adhesive tape. Appellants then proceeded to ransack her home, stealing approximately $575 in cash, two pistols, four shotguns and a jewelry box and its contents. While the robbery was in progress Connie Goss and her two-year-old child came to the house. Ms. Goss was also forced at gunpoint to lie on the floor, and her hands and feet were bound with adhesive tape. After ransacking Phillips' house appellants departed, with a warning that they were leaving someone outside and Phillips and Goss would be killed if they attempted to leave and call the police.

### Appellant House

1. House contends it was error for the court to allow him to be tried in prison garb. There is nothing in the transcript to indicate that appellant was dressed in prison garb, and he made no objection at trial to appearing in prison garb. The right to wear civilian clothes

rather than prison clothing at trial is a procedural right "that may be lost where there is a failure to assert it properly." *Sharpe v. State*, 119 Ga. App. 222 (1) (166 SE2d 645) (1969). See also *Pike v. State*, 169 Ga. App. 358 (312 SE2d 808) (1983); *Timmons v. State*, 223 Ga. 450 (1) (156 SE2d 68) (1967). Since appellant did not assert his right to appear in civilian clothing, he waived that right. *Sharpe, Timmons*, supra.

2. House contends the trial court erred by overruling an objection to his in-court identification, because the identification was tainted by a pretrial lineup. He argues that the lineup was conducted in the absence of requested counsel, and was tainted by the fact that House was the first person in the lineup and was the only person wearing a yellow armband with his name on it. These arguments are without merit.

A lineup was conducted the night of appellant's arrest, and he made no request for an attorney after he was advised of his rights immediately after his arrest and again shortly before the lineup. House had not been indicted and there is no constitutional right to counsel at a pre-indictment lineup. Kirby v. Illinois, 406 U. S. 682, (92 SC 1877, 32 LE2d 411); *Burgess v. State*, 242 Ga. 889, 891 (3) (252 SE2d 391) (1979).

In regard to whether the lineup was impermissibly suggestive, Connie Goss testified that she did not notice that House was wearing a yellow armband at the lineup. She identified House from his unusual eyes, which she had noticed at the time of the robbery. She also testified that her identification in court was based exclusively on her memory of the incident. Mrs. Phillips also testified that her in-court identification was based on what happened at her home, and she was not relying in any way on the pretrial lineup. Additionally, evidence was presented at the suppression hearing as to the procedures followed in conducting the lineup. There is nothing in the transcript to indicate that the lineup was impermissibly suggestive, or that there was a likelihood of misidentification. See Neil v. Biggers, 409 U. S. 188 (93 SC 375, 34 LE2d 401). As the in-court identification was shown to be independent of the lineup identification, it was not error to allow the in-court identification. *Harley v. State*, 160 Ga. App. 613, 614 (287 SE2d 582) (1981). See also *Hayes v. State*, 163 Ga. App. 177, 178 (2) (293 SE2d 62) (1982).

3. House contends it was error to admit his oral confession to the police because appellant did not understand his rights and the detective used trickery to obtain the statement. At a Jackson-Denno hearing (Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908)), Detective Kettering testified that at the time House was arrested he was advised fully of his Miranda rights (Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694)) and stated that he understood

each of his rights. When they arrived at the Henry County police station House was again advised of his rights by Detective-Sergeant Hill. House was not under the influence of alcohol or drugs, and no threats or promises were made to him. House stated that he did not want to say anything until after the lineup was conducted, and he did not ask for an attorney. After the lineup appellant talked to Kettering, but informed him that anything he (House) said was off the record. House now argues that because he stated his confession was off the record, it is clear that he did not understand his rights and the confession was obtained by trickery. We do not agree.

House was advised fully of his rights on two occasions and stated he understood his rights. Kettering did not state that House's confession was off the record and would not be considered against him. On the contrary, Kettering made no response to House's statement that his comments were off the record. Thus, no trickery was involved and the evidence established clearly that House understood his rights. Factual and credibility determinations as to the voluntariness of a confession are normally made at a suppression hearing and must be accepted by appellate courts unless such determinations are clearly erroneous. *Griswold v. State*, 159 Ga. App. 22, 23 (2) (282 SE2d 679) (1981). There is no indication that the trial court's determination as to voluntariness in this case was erroneous; thus, it was not error to admit House's oral confession into evidence.

### *Appellant Montgomery*

4. Montgomery contends the trial court erred by denying his motion to sever, as the evidence was so strong against House that the jury considered such evidence to convict Montgomery. Mrs. Phillips positively identified House and Montgomery as the perpetrators of the robbery. With the exception of House's oral confession, which did not implicate Montgomery, the evidence against House was no stronger than the evidence against Montgomery.

The decision to grant a severance is within the sound discretion of the trial court, and the burden is on appellant to do more than raise the possibility that a separate trial would give him a better chance of acquittal. *Kates v. State*, 152 Ga. App. 29, 33-34 (7) (262 SE2d 221) (1979). Appellant was required to make a clear showing of prejudice resulting in a denial of due process, *Stovall v. State*, 236 Ga. 840, 841 (225 SE2d 292) (1976), and the transcript shows he did not meet that burden. Hence, this enumeration of error is without merit.

5. Montgomery contends it was error to deny his motion for a new trial based on newly discovered evidence. At a hearing on the motion Jackie Dutton testified that Montgomery was working for Dutton from 5:00 or 5:30 p.m. the night of the robbery until the fol-

lowing morning, and was never out of Dutton's sight the entire night. Dutton also presented business records to confirm this fact. He also testified that he had not come forward earlier because he was unaware that Montgomery was charged with robbery on the night in question until after his conviction and sentence.

*Burge v. State*, 133 Ga. 431, 432 (2) (66 SE 243) (1909) sets forth the following criteria that must be satisfied to authorize a new trial based on newly discovered evidence: (1) that the evidence has come to the defendant's knowledge since the trial; (2) that it was not because of a lack of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness. See also *Emmett v. State*, 232 Ga. 110, 117 (7a) (205 SE2d 231) (1974).

The evidence discloses that Montgomery did not exercise due diligence prior to trial to ascertain whether or not he was working for Dutton at the time of the robbery. Montgomery testified at the hearing on the motion that his attorney visited him in jail four or five times prior to trial and asked if any person could provide an alibi for Montgomery. His attorney inquired about this several times, and although Montgomery does not "think" he gave his attorney Dutton's name, Montgomery told his attorney that he worked for Dutton on weekends (the robbery occurred on a Friday night). Based on this evidence, it is clear that Montgomery's attorney, through the exercise of due diligence, could have learned Dutton's name and interviewed him prior to trial. Where the showing as to diligence in reference to newly discovered evidence is not satisfactory, the discretion of the trial judge in refusing to grant a new trial will not be disturbed. *Emmett*, supra at 119.

*Judgments affirmed. Quillian, P. J., and Pope, J., concur.*

DECIDED JANUARY 31, 1984 —
REHEARING DENIED MARCH 5, 1984.

*Charles L. Cash, Jr.*, for appellant (case no. 66793).
*Thomas R. McBerry*, for appellant (case no. 66794).
*E. Byron Smith, District Attorney, Donald J. Coffey, Assistant District Attorney*, for appellee.