43655. WANSLEY v. THE STATE.
(352 SE2d 368)

HUNT, Justice.

Robert Carl Wansley was convicted for the murder of his girl friend, Cora Lucille Bennett Grant, and sentenced to life in prison.[1] He appeals. He raises the sufficiency of the evidence, error in denying his demand for jury records, in denying his motion for new trial after an improper comment by the prosecutor, and in allowing the state to reopen its case after the defense rested. We affirm.

1. The victim and the defendant lived together in the defendant's home in Buford, Georgia, with their eight-month-old daughter. On the evening of August 2, 1985, he went out while she remained at home with her daughter and the three children of a friend, Sapphire Smith. In the early hours of the morning, then eight-year-old Sally Johnson, Sapphire's daughter, testified she heard the defendant and the victim arguing in the kitchen and heard the defendant "smacking" her. The victim then came into the bedroom where Sally and the baby were presumed to be asleep. The defendant followed her in and

---

[1] The killing occurred on August 3, 1985, and the defendant was indicted on September 24, 1985. He was tried February 3 through 5, 1986. His motion for new trial was filed on February 10, 1986, amended on May 14, 1986, and denied after a hearing on May 28, 1986. His notice of appeal was filed on June 27, 1986, the case was docketed here on July 3, 1986, and submitted for decision on August 15, 1986.

"smacked" her again, then ran out of the room. The defendant then returned to the bedroom, aimed the shotgun at the victim and told her to get out of the house. The victim started packing. He again aimed the gun at her and she said: "If you shoot me you'll regret it." Then he put the gun up to her chest and fired and she fell to the floor. Sally got out of bed and went into another bedroom to awaken her 12-year-old brother, Keith Jones. They attempted to arouse the victim but ran back into the other bedroom and pretended to be asleep when they heard the defendant returning. Keith denied at the time that his sister awakened him, but later testified that he did this because he was afraid of the defendant.

Wipings were taken from the defendant's hands and scrapings from under his nails, but no positive evidence of having fired a gun or of having been in a fight was found. A shotgun, purchased by the defendant's brother, which he had given to his sister to pawn was discovered by a prisoner work detail in some kudzu along a highway. A firearms expert reported that that shotgun was capable of firing the shells which resulted in the victim's death. The defendant testified that he came home to find the victim lying on the floor; that the doors were unlocked, and that he thought she had passed out. (The victim's blood-alcohol level was .24.)

The defendant argues that the state did not prove him guilty beyond a reasonable doubt. He urges the possibility that the children's mother, Sapphire Smith, could have killed the victim and that the children's testimony against him was unreliable. He points here to Keith's contradictory statements about whether or not he observed the body of the victim and to Sally's statement that she was awake and would have seen her mother come in, which was contradicted by her mother's statement that she did come in to check her children but found them asleep together in the other bedroom and the victim "passed out" on the floor, but did not know about the killing until Sally told her the next morning. We note here that an investigating officer testified he also found the children asleep. It is, however, the jury's duty to reconcile conflicting testimony, and to assess the credibility of the witnesses. We find, reviewing the evidence in the light most favorable to the jury's verdict that a rational trier of fact could have found the defendant guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Black v. State*, 255 Ga. 668, 670 (341 SE2d 436) (1986).

2. Defendant filed a pretrial demand seeking the production by the district attorney of his jury records which would disclose which members of the panel in this case had previously served on a jury and, if so, whether their verdict was guilty or not guilty. He asserts as error the ruling of the trial court denying his demand and notice to produce, made after an in camera inspection revealing nothing of an

exculpatory nature.

In this state the prosecution is not required to reveal or produce investigatory work routinely performed in criminal cases unless it is subject to discovery under OCGA § 17-7-210 (statements by defendant in custody), § 17-7-211 (scientific reports), or under *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963) (exculpatory evidence).

Our Court of Appeals has considered this question in *Toole v. State*, 146 Ga. App. 305 (5) (246 SE2d 338) (1978) and concluded that such information, while concededly valuable to either side, is not exculpatory. Further, as defendant concedes, it has been held improper to inquire of a juror as to whether he voted guilty or not guilty in a previous case. See *Henderson v. State*, 251 Ga. 398, 401 (306 SE2d 645) (1983).

In urging this enumeration of error, defendant relies on a recent California case, *People v. Murtishaw*, 29 Cal.3d 733; 175 Cal. Rptr. 738, 631 P2d 446 (1981). There the California Supreme Court decided that indigent defendants were at an unfair disadvantage concerning information about prospective jurors and held that the trial court would have discretionary authority to permit the defense access to jury records compiled by the prosecution. This ruling, which was prospective, did not result in a reversal of Murtishaw's conviction and the court recognized that this was a precedent-breaking rule, not observed in a majority of jurisdictions. We decline to adopt such a rule.

3. The defendant next contends that the trial court erred in not granting a mistrial when the prosecutor stated in her opening statement that the defendant drove across town to buy some marijuana. The motion was denied and the marijuana was never mentioned again. Pretermitting whether or not this evidence was admissible as part of the res gestae as decided by the trial court, the error if any was harmless. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976). Additionally, we note that the trial court instructed the jury that opening and closing statements were not evidence.

4. In a similar enumeration, the defendant urges error in the prosecutor's opening statement that ". . . little Sally came home that morning and said, Robert shot Lucille and she's dead," when no such evidence was elicited at trial, and such statement would be hearsay. Sapphire Smith was not asked this question at the trial; she said only that she found out about the killing the next morning. Sally Johnson testified, however, that she told her mama about the killing. We find no error. No hearsay was admitted at trial and the prosecutor's remark may fairly be inferred from the evidence.

5. We find no abuse of discretion in allowing the state to reopen its case to ask Keith Jones why he told the police he did not wake up Sally when his testimony was impeached by a prior inconsistent state-

ment during the defendant's case. See *State v. Roberts*, 247 Ga. 456 (277 SE2d 644) (1981).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 27, 1987.

*Huff & Moore, Johnny R. Moore*, for appellant.

*Thomas C. Lawler III*, District Attorney, *Michael J. Bowers*, Attorney General, *Eddie Snelling, Jr.*, Assistant Attorney General, for appellee.